UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RL BB ACQ II-FL LAND 360, LLC,            )
                                          )
            Plaintiff,                    )    1:11-CV-285
v.                                        )
                                          )    Judge Curtis L. Collier
MACLAND, 360, LLC, *et al.*               )
                                          )
            Defendants.                   )

# **M E M O R A N D U M**

Before the Court is Plaintiff RL BB ACQ II-FL LAND 360, LLC's ("Plaintiff") motion for summary judgment (Court File No. 58). Defendant Macland 360, LLC ("Macland") and Defendant H. Bernard Dixon ("Dixon") (collectively, "Defendants") did not respond to Plaintiff's motion.[1] Plaintiff moves for summary judgment on its claims Macland breached a note by failing to pay its indebtedness when the note matured, and Dixon breached a guaranty contract for failing to pay the indebtedness when the note went unpaid. In the alternative, Plaintiff seeks summary judgment on its unjust enrichment claim against Defendants. Plaintiff also seeks attorney's fees and expenses, as provided by the note and guaranty contract. For the following reasons, the Court will **GRANT** Plaintiff's motion (Court File No. 58). The Court will order Plaintiff to submit a proposed final statement of its indebtedness, including total interest accrued and reasonable attorney's fees, within fourteen days of this order, which the Court will then order Defendants to pay.

**I.    FACTS AND PROCEDURAL HISTORY**

The following facts are established by evidence offered by Plaintiff. Plaintiff produces

---

[1] Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought. E.D.TN. LR7.2. Defendant Aulton Devon Petty failed to answer Plaintiff's complaint or file any other responsive pleading. Default judgment was entered against Defendant Petty before the instant motion was filed (Court File No. 25).

copies of the operative documents, attached to its amended complaint, as well as affidavits and depositions in support of its factual allegations. The Court is without the benefit of a response by Defendants that would refute any of the evidence Plaintiff offers.

Plaintiff is a Florida limited liability company wholly owned by RL BB Acquisition, LLC ("RL Acquisition"), a Delaware limited liability company. RL Acquisition is itself wholly owned by Rialto Real Estate Fund, LP ("Rialto Real Estate"), a Delaware limited partnership. Rialto Real Estate's partners consist of Rialto Partners GP, LLC ("Rialto Partners"), general partner, and Lennar Distressed Investments, LLC ("Lennar"), a limited partner. Rialto Partners consists of Lennnar and Rialto Capital Management, LLC, both of Delaware and both wholly owned by Lennar Corporation (Court File No. 59-1, Tyde Aff., Ex. A). Macland, on the other hand, is incorporated in Georgia and has its principal place of business in Tennessee. Dixon is a citizen of Tennessee. Defendant Petty, against whom default judgment has been entered, is domiciled in Georgia.

On February 22, 2005, Macland executed a note in favor of The Bank/First Citizens Bank ("First Citizens") of Cleveland, Tennessee in the principal amount of $1,000,000 (Court File No. 37-1, Ex. A). The note's maturity date was February 22, 2006. The same day, Dixon executed a guaranty in favor of First Citizens in which he guaranteed Macland's payment and performance on the note (*id.*, Ex. B). After Petty executed a similar guarantee, First Citizens disbursed funds to Macland (Court File No. 59-1, Tyde Aff., Ex. A, p. 4). The note was also secured by a Deed to Secure Debt and Security Agreement, dated February 22, 2005, which encumbered Land Lot 471 of the 19th District and 2nd Section of Cobb County, Georgia (Court File No. 37-1, Ex. D). On February 7, 2006, Macland and First Citizens renewed the original note and extended its maturity date to February 7, 2007 (*id.*, Ex. E) ("Renewal of: 2501004109"); (*see also* Court File No. 37-1,

2

Ex. A) ("Loan Number: 2501004109").

In November 2006, First Citizens was acquired by and merged with Branch Banking and Trust Company ("BB&T") (Court File No. 59-1, Tyde Aff., Ex. A, p. 4). BB&T then became the holder of the original note, note renewal, Dixon and Petty guaranties, and security deed (*id.*). On February 2, 2007, Macland executed a renewal of the note titled "Modification, Renewal, and Restatement of Note (For Notes Acquired by Merger)" ("BB&T renewal") in the original amount of $1,000,000 (Court File No. 37-1, Ex. F). The modification stated the terms of the original note remain "in full force and effect" and "[t]he indebtedness and obligations of [Macland] evidenced by the Original Note are not extinguished hereby, and [Macland] acknowledge[s] that this Note constitutes a modification, restatement, and substitution of the Original Note" (*id.*). The note requires payment of reasonable attorney's fees and costs of collection. Also on February 2, 2007, Dixon and Petty executed guaranty agreements guaranteeing Macland's payment and performance (*id.*, Exs. G, H). Over the next three years, BB&T and Macland executed three Note Modification Agreements to extend its maturity date (*id.*, Ex. F). The final of these was executed April 19, 2010, and provided for monthly installments to be paid between May 19, 2010 to April 19, 2011 (*id.*).

BB&T subsequently executed an assignment of loan documents (*id.*, Ex. I) and an assignment of security instruments (*id.*, Ex. J) to Rialto Real Estate. BB&T provided its indorsement to Rialto Real Estate on an allonge.[2] This allonge was effective on February 25, 2011 (*id.*, Ex. F). On September 22, 2011, Rialto Real Estate also executed an assignment of loan

---

[2] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Blacks Law Dictionary (9th ed. 2009); *see also* Tenn. Code Ann. § 47-3-204, cmt. 1 ("An indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement.").

3

documents (*id.*, Ex. K) and assignment of security instruments (*id.*, Ex. L) to RL BB ACQ-GA MCL 360, LLC ("GA MCL"). Rialto Real Estate provided its indorsement to GA MCL on an allonge effective June 9, 2011 (*id.*, Ex. F). Finally, on September 26, 2011, GA MCL executed an omnibus assignment (*id.*, Ex. M) and an assignment of security instruments (*id.*, Ex. N) to Plaintiff. GA MCL provided its indorsement to Plaintiff on an allonge (*id.*, Ex. F) dated September 26, 2011. Plaintiff is in possession of the original, "blue ink" loan documents that are the subject of this case (Court File No. 59-1, Tyde Aff., Ex. A, p. 2).

Macland failed to pay its indebtedness under the note on the date of maturity (*id.* at p. 9); (*id.*, Ex. C, Macland Request for Admissions, ¶ 28). Dixon has not paid the outstanding indebtedness (*id.*, Ex. A, p. 9). Plaintiff demanded payment by letter on October 7, 2011 and informed Defendants of its intent to seek attorney's fees (*id.*); (Court File No. 37-1, Ex. O). Plaintiff calculates the total outstanding indebtedness as of January 14, 2013 to be $562,014.91, which includes $474,015.84 in principal and $87,999.06 in accrued interest as of the date Plaintiff's motion was filed. Plaintiff states interest on the indebtedness continues to accrue at the rate of $108.63 per day. Plaintiff also seeks ten percent[3] of the outstanding principal, or $47,401.00, in reasonable attorney's fees.

## II.     STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[3] In Plaintiff's statement of material facts it states, "As set out in the Affidavit of counsel for the Plaintiff, the Plaintiff's reasonable attorneys' fees under the circumstances is *five percent (10%)* of the outstanding principal amount due under the Note." (Court File No. 59, p. 10) (emphasis added). The Court concludes, based on counsel's affidavit and other filings, Plaintiff intends to seek ten percent of the outstanding principal rather than five percent.

4

The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based merely on its allegations; it must submit significant probative evidence to support its claims. *See Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. DISCUSSION

The Court is without the benefit of Defendants' input regarding Plaintiff's motion. In Plaintiff's motion, it argues it has established a prima facie case and then refutes each of the defenses listed in Defendant's answer to Plaintiff's amended complaint. The Court concludes this is an appropriate method of considering Plaintiff's motion and will structure its discussion similarly.

#### A. Subject Matter Jurisdiction

The Court, however, must first consider Defendants' contention the Court lacks subject matter jurisdiction over this case. Defendants appear to contend, because the original payee of the note was First Citizens, a resident of Tennessee, the case lacks complete diversity. Defendants are correct the basis for subject matter jurisdiction in this case is diversity of citizenship pursuant to 28 U.S.C. § 1332, which provides federal court jurisdiction for controversies between citizens of different states when the amount in controversy exceeds $75,000. Defendants do not dispute, the Court presumes, that Plaintiff is a Florida limited liability company or that none of Defendants is a resident of Florida. Nor do Defendants appear to dispute the amount in controversy exceeds $75,000. Based on the language of § 1332, the Court has subject matter jurisdiction over this case because it is a "civil action[] where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332.

Defendants do argue diversity is lacking in this case because the original payee of the note at issue was a Tennessee resident. The Court is aware of no authority that requires diversity between the parties and the original payee on a note, or with any of the interceding holders of a note. On the contrary, courts occasionally are called to determine whether the assignment of a note to a related entity was made in collusion *to establish* diversity jurisdiction in violation of 28 U.S.C. § 1359. *Compare Amrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1314 (11th Cir. 2007) (declining to apply a presumption of collusion in an assignment between related entities), *and Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1067 (7th Cir. 1992) ("Congress could if it wanted adopt a rule forbidding the conferral of diversity jurisdiction by assignment to an affiliated corporation but it has not done so and we are given no urgent reason to try to do so in its place even to the extent of creating a soft rule, that is, a presumption."), *with McCulloch v. Velez*,

6

364 F.3d 1, 6 (1st Cir. 2004) (recognizing a presumption assignments or transfers of interests between related parties are ineffective to create diversity jurisdiction), *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991-92 (9th Cir.1994) (same), *and Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2d Cir. 1976) (same). Those decisions indicate, absent collusion, assignment of a note will create diversity jurisdiction where the assignee is a citizen of a different state from the defendants in an enforcement action. No such collusion has been alleged here and the only related entities involved in this case are all citizens of different states from Defendants. Accordingly, the Court concludes it has subject matter jurisdiction under 28 U.S.C. § 1332.

## B. Prima Facie Case

"In a suit on a note, the holder makes out a prima facie case by producing the note signed by the maker and by showing that there is a balance due on the note." *Ingram v. Earthman*, 993 S.W.2d 611, 631 (Tenn. Ct. App. 1998), *abrogated in part on other grounds by Fahrner v. SW Mfg, Inc.*, 48 S.W.3d 141 (Tenn. 2001), *as recognized in Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 461 n.25 (Tenn. Ct. App. 2012). Plaintiff has accomplished this here. Plaintiff has presented an affidavit stating Plaintiff is in possession of the original note and loan documents (Court File No. 59-1, Tyde Aff., Ex. A, pp. 2-3). Moreover, Defendants do not appear to refute the legitimacy of the underlying note nor that there is a balance due (Court File No. 37, Answer, ¶ 11, 12) (admitting to the existence and validity of the note but demanding proof of possession); (Court File No. 59-1, Macland and Dixon Requests for Admissions, Exs. C, E) (admitting authenticity of loan documents and that loan is in default but stating amount of indebtedness outstanding is in dispute and "subject to accounting"). Accordingly, Plaintiff has

established a prima facie case of entitlement to payment and the Court must consider the defenses alleged in Defendants' answer.

### C. Lack of Consideration

The first defense alleged by Defendants is Dixon's argument the guaranty is void for lack of consideration. "[G]uarantors are not favored under [the] law [of Tennessee]." *Galleria Assocs., L.P. v. Mogk*, 34 S.W.3d 874, 876 (Tenn. Ct. App. 2000). That is to say, "a guarantor in a commercial transaction is to be held to the full extent of his engagements and the words of the guaranty will be taken as strongly against the guarantor as the sense will admit." *Id.* Although it is true a guaranty requires consideration to be enforceable, "[c]onsideration for a contract of guaranty may be an extension of credit to the guaranteed, an extension of time for the payment of the debt, or detrimental reliance by the creditor on the promise of the guarantor to guarantee payment." *Id.*

The only explanation for Dixon's claim the guaranty lacks consideration is found in his answer to Plaintiff's interrogatories, which Plaintiff attached to its motion as an exhibit (Court File No. 59-1, Ex. D). Defendant states,

> There was no consideration given at the time of obtaining the Dixon Guaranty. The Note was not originally guaranteed and had matured approximately one year prior to execution of the guaranty and there was never an indication that the Note would not be extended without the guaranty. The bank had already extended the Note and therefore any alleged "extension" or "renewal" as consideration must fail as evidence [sic] by the bank's failure to take any action for over a year on the matured note. Such consideration was illusory at best and is inadequate and insufficient consideration for the guaranty which forms the basis of this suit. In addition, there appears to be no obligation owed by Macland 360, LLC.

(*id.* at p. 3).

This explanation conflicts with the evidence before the Court. The guaranty and the original

8

note were executed on the same day, February 22, 2005, rather than one year apart as alleged by Dixon. This extension of credit to the guaranteed is sufficient consideration to enforce the guaranty. *See Galleria Assocs.*, 34 S.W.3d at 876 ("[C]onsideration for a contract of guaranty may be an extension of credit to the guaranteed."); *see also Institutional Jobbers Co. v. Woodson*, 1989 WL 83289, at *3 (Tenn. Ct. App. July 28, 1989) ("[A] guaranty, although executed after the debt was created, if connected with and the inducement to the original credit, or the result of a previous promise by the guarantor upon the faith of which the credit was obtained by the original debtors, it requires no new or independent consideration to render it valid, but it is a part of the original transaction, and the consideration upon which the credit was given.") (quoting *S.M. Williamson & Co. v. Ragsdale*, 170 Tenn. 439 (1936)). If Dixon's argument is his original guaranty was rendered unenforceable by later extensions or the BB&T renewal, the original guaranty explicitly states "[t]he liability of the Undersigned shall not be affected or impaired by . . . any one or more extensions or renewals of indebtedness (whether or not for longer than the original period); or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness" (Court File No. 37-1, Ex. B, p.2). On the other hand, if Dixon's argument is this renewal constituted a novation rendering the original note ineffective, the Court cannot conclude a novation occurs where the document itself states the original agreement is still effective, as the BB&T renewal does. *See Bank of Crockett v. Cullipher*, 752 S.W.2d 84, 89 (Tenn. Ct. App. 1988) ("[A] novation must be clearly established by evidence of the discharge of the original debt by express agreement or by the acts of the parties clearly showing the intention to work a novation.") (internal quotations omitted); *see also* (Court File No. 37-1, Ex. F) ("All of the terms, covenants, and conditions of the [original] Agreements remain in full force and effect . . . . The indebtedness and obligations of the Borrowers

evidenced by the Original Note are not extinguished hereby, and the Borrowers acknowledge that this Note constitutes a modification, restatement, and substitution of the Original Note.").

Dixon may be arguing the guaranty on the BB&T renewal, executed February 2, 2007, lacks consideration, because it was executed after the maturity of the original note. But that guaranty was executed pursuant to, and on the same day as, the BB&T modification, renewal, and restatement of the original note which explicitly stated all obligations related to the original note remained in full force and effect. Moreover, that BB&T renewal also extended the date of maturity to August 7, 2008, which itself would constitute consideration for the guaranty. *See Galleria Assocs.*, 34 S.W.3d at 876 ("[C]onsideration for a contract of guaranty may be . . . an extension of time for the payment of the debt"). If Dixon's position is the note had already matured and no payment was requested, rendering any modification extending the date without value, that contention conflicts with the evidence presented, which shows the original maturity date was February 22, 2006, extended on February 7, 2006 to February 7, 2007, and then by the BB&T renewal on February 2, 2007 to August 8, 2008.

To the extent the Court has been able to discern Defendants' position, it finds it to be without merit. Consideration existed to render Dixon's guaranty enforceable.

### D. Standing

Defendants also state in their answer that Plaintiff lacks standing on the note because it did not allege in its complaint it was in possession of the original note. Presumably Defendants rely on Tenn. Code Ann. § 47-3-201, which provides "if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone." Because

the original note was payable to an identified person (Court File No. 37-1, Ex. A) ("I promise to pay to you, or your order . . . ."), negotiation requires both an indorsement by the holder and transfer of possession. Plaintiff has demonstrated both of these requirements. After First Citizens and BB&T merged, BB&T became owner and holder of the note and loan documents. *See First Tenn. Bank Nat'l Ass'n v. C.T. Resorts Co., Inc.*, No. 03A019503-CH-00102, 1995 WL 511884, at *2 (Tenn. Ct. App. Aug. 30, 1995) (noting First Tennessee became "owner and holder" of a promissory note and individual guaranties after merging with the original creditor and executing a renewal agreement with debtors similar to the BB&T renewal here). Plaintiff has provided allonges containing indorsements for each holder subsequent to BB&T. Plaintiff has also provided an affidavit stating it, or its attorney on its behalf, is in possession of the original notes and loan documents. Therefore, there is no merit to Defendants' argument.

### E. Collateral

Defendants raise two related arguments regarding the land securing the promissory note. First, Defendants argue Plaintiff failed to comply with O.C.G.A. § 44-14-161, a Georgia statute that requires report of foreclosure sales if made without legal process. Defendants state in response to Plaintiff's interrogatories, Plaintiff did not allege it enforced its security by foreclosing on collateral. As Plaintiff rightly notes, O.C.G.A. § 44-14-161 is inapplicable here. That statute provides for required legal process *after* a foreclosure sale. *See Ashburn Bank v. Reinhardt*, 358 S.E.2d 675, 677 (Ga. Ct. App. 1987) (holding § 44-14-161 inapplicable as a matter of law because "no sale of the properties pursuant to non-judicial foreclosure by the exercise of a power of sale has ever occurred"). Defendants' first collateral argument fails.

Second, Defendants make a similar argument that Plaintiff failed to "realize" upon its

collateral. Plaintiff was not required to foreclose on the property securing the debt, because a creditor is entitled to bring an action *in personam* to recover on a debt even where the debt is otherwise secured. *See N.C. Mut. Life Ins. Co., Inc. v. Evans*, 1990 WL 212854, at *3 (Tenn. Ct. App. Dec. 31, 1990) ("Plaintiff was not required to mitigate its damages by foreclosure because a creditor has the choice to bring suit in order to collect on a trust deed.") (citing *Stephens v. Greene Cnty. Iron Co.*, 58 Tenn. 71, 77 (1872) ("It is well settled that a mortgage, or deed of trust, is but a security for the debt, and a creditor, by note or other legal evidence of debt, may, at his election, bring his action on the note, or legal liability, or proceed upon his mortgage or trust security . . . .")); *see also Cmty. Drug Co. v. Liquid Carbonic Corp.*, 174 Tenn. 575 (1939) (quoting *Stephens*, 58 Tenn. at 71). This is also the rule in Georgia, where the property is located and the law of which governs the security deed. *See REL Dev., Inc. v. Branch Banking & Trust Co.*, 699 S.E.2d 779, 781 (Ga. Ct. App. 2010) ("'[A] creditor who holds a promissory note secured by a deed is not put to an election of remedies as to whether he shall sue upon the note or exercise a power of sale contained in the deed, but he may do either, or pursue both remedies concurrently until the debt is satisfied.'") (quoting *Oliver v. Slack*, 14 S.E.2d 593 (1941)). Defendants' second collateral argument fails.

Defendants also assert an "unclean hands" defense on the basis Plaintiff failed to undergo foreclosure proceedings related to the Georgia property. Because Plaintiff was not required to do so, this defense also fails.

### F. Calculation of Interest

Defendants list the following defense in their answer: "Defendants specifically deny the amount claimed and would show that the calculation of interest and the factors used therein is impossible to determine such that the calculation of interest must fail for lack of certainty and ability

12

to determine with reasonable certainty." Plaintiff responds that it has provided an affidavit and "payoff summary" of the note calculating total outstanding principal of $474,015.84 and accrued interest as of January 14, 2013 of $87,999.06. Given no reason to doubt this evidence, and no contrary evidence provided by Defendants on summary judgment to establish a genuine issue of fact, the Court concludes this argument is without merit.

### G. Failure to State a Claim

Finally, Defendants state in their answer the complaint fails to state a claim on which relief can be granted. In Dixon's answer to Plaintiff's interrogatories, he states, "The Note is not an enforceable obligation on its face." Presumably, Defendants' theory relies on the same grounds as its motion to dismiss (Court File No. 28), which was denied without prejudice as a part of a consent order that also allowed Plaintiff to amend its complaint. Defendants' theory in the motion to dismiss was the BB&T renewal did not constitute a promissory note, and because Plaintiff's original complaint did not mention or attach the original note, there was no enforceable promissory note alleged. However, after Plaintiff amended its complaint and included factual allegations regarding the original note and attached a copy of the original note to its amended complaint, Plaintiff cured these issues to the extent they existed. Moreover, the Court has already concluded the BB&T renewal did not constitute a novation and the underlying obligation remained enforceable. Accordingly, this defense lacks merit.

## IV. CONCLUSION

Having considered, to the best of its ability, Defendants' possible arguments, the Court concludes they lack merit. Because Defendants failed to respond to Plaintiff's motion for summary judgment, the Court concludes Plaintiff has established liability of Defendants on the note and

13

accurately states the outstanding indebtedness it is owed. Accordingly, the Court will **GRANT** Plaintiff's motion (Court File No. 58). The Court will order Plaintiff to submit a proposed final statement of its indebtedness, including total interest accrued and reasonable attorney's fees, within fourteen days of this order, which the Court will then order Defendants to pay.

**An order shall enter.**

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**